**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ABDUR-RAHEIM A. BRADDOX,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 2:26-cv-210**

**HAMPTON ROADS WORKFORCE DEVELOPMENT CORPORATION D/B/A HAMPTON ROADS WORKFORCE COUNCIL,**

**Defendant.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is Defendant Hampton Roads Workforce Development Corporation d/b/a Hampton Roads Workforce Council's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 8 ("Mot. Dismiss"). Defendant filed a Memorandum in Support of the Motion. ECF No. 9 ("Mem. Supp."). Abdur-Raheim A. Braddox ("Plaintiff") filed a Response in Opposition. ECF No. 10 ("Resp. Opp'n"). Defendant filed a Reply in support of its Motion to Dismiss. ECF No. 11 ("Def.'s Reply"). The Court has considered the parties' memoranda, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on the Motion is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED in PART and DENIED in PART**.

## I. FACTUAL AND PROCEDURAL HISTORY

Relevant to Defendant's Motion to Dismiss and stated in the light most favorable to Plaintiff, the following alleged facts are drawn from the Amended Complaint, ECF No. 7 ("Am. Compl."), and attachments thereto.

In February 2025, Plaintiff (male) was hired as a Maritime Career Planner by Defendant.

Am. Compl. ¶ 9. Maritime Career Planner duties primarily consist of communicating with industry employers, record-keeping, and data entry. *Id.* ¶ 10. During this time, Plaintiff suffered from a traumatic brain injury, chronic pain, herniated discs, migraines, depression, anxiety, and significant visual impairments. Plaintiff disclosed his disabilities to Defendant when he was hired. *Id.* ¶ 9.

In prior years, Maritime Career Planners worked remotely, with only occasional in-person attendance. *Id.* ¶ 11. After the United States President created the Department of Government Efficiency ("DOGE") in January 2025, Defendant's Director, Michelle Olsen, informed Maritime Career Planners that they would no longer be allowed to work from home full time. *Id.* ¶ 13.

*Disability Status-Related Claims*

Plaintiff struggles to read small print because of his vision impairment. *Id.* ¶ 15. Despite this knowledge, Defendant refused to provide Plaintiff with large print documents as an accommodation. *Id.* During a meeting with multiple Maritime Career Planners, Plaintiff could not read small print on a PowerPoint Presentation. *Id.* Plaintiff's manager, Star Mohammed, responded that Plaintiff needed eyeglasses. *Id.*

In April 2025, Ms. Olsen transferred Plaintiff from Defendant's Newport News location to the Hampton location. *Id.* ¶ 18. This move extended Plaintiff's commute. *Id.* Plaintiff told Defendant the transfer was burdensome due to his anxiety, chronic pain, and vision impairment. *Id.* Plaintiff states that Ms. Olsen's reasons for the transfer were "pretextual."[1] *Id.*

In May 2025, Defendant requested that Plaintiff travel to Norfolk over a weekend to attend a job fair. *Id.* ¶ 19. Plaintiff submitted medical documentation supporting his disability-related need to rest in lieu of attending the fair. *Id.* Less than a week later, Ms. Mohammed and

[1] Plaintiff does not further describe the reason Ms. Olsen provided for the transfer.

Defendant's Director, Michelle Olsen, wrote up Plaintiff for insubordination. Plaintiff was required to sign an "Employee Coaching Form," which he could not read due to its small font. *Id.* ¶ 20.

At the time of Plaintiff's employment, Maritime Career Planners were permitted to work from home on Fridays. *Id.* ¶ 23. In June 2025, Plaintiff formally requested that he be allowed to work full-time from home as an accommodation. *Id.* ¶ 21. Defendant denied this request. *Id.* At the time, Defendant permitted a female, non-disabled Maritime Career Planner to work from home, "simply because she lived on the Eastern Shore." *Id.* ¶ 23 (footnote omitted).

Later that month, Defendant's Human Resources representative threatened Plaintiff with termination. *Id.* In July 2025, Plaintiff emailed Defendant's board alleging harassment and retaliation by his superiors. *Id.* Plaintiff alleges that after his accommodations request, management attempted to get information from his coworkers to find grounds for his termination. *Id.* ¶ 22. Plaintiff also believes Ms. Mohammed told a co-worker about his protected health information, and that Defendant wanted to fire Plaintiff. *Id.*

*Gender-Related Claims*

Plaintiff alleges that he was "consistently treated in a disparate manner from his similarly situated female co-workers." *Id.* ¶ 16. The sex-based allegations state that, in contrast to its female employees, Defendant (1) required Plaintiff to work outside of normal business hours without pay; (2) disciplined Plaintiff for wearing a hat or durag at work; (3) transferred Plaintiff to a less-desirable work location; (4) denied Plaintiff's request to work from home; and (5) retaliated against Plaintiff for his workplace complaints through the terms of employment and his eventual termination. *Id.* ¶¶ 16-24.

Plaintiff states that he was required to work "off the clock" without pay, and that Defendant made him sign multiple forms and acknowledgements that his female counterparts were not required to sign. *Id.* ¶ 16. In April 2025, Ms. Mohammed cited Plaintiff for allegedly wearing a hat or durag at work, in violation of the company dress code. *Id.* ¶ 17. Plaintiff observed that his female coworkers were allowed to wear hats without repercussion. *Id.*

Less than a week after the dress code citation, Ms. Olsen transferred Plaintiff from Defendant's Newport News office to its Hampton office, against his wishes. *Id.* ¶ 18. Defendant was terminated on or about July 21, 2025, for allegedly being unable to perform the essential duties of his position. *Id.* ¶ 24.

*The Underlying Action*

Before initiating the lawsuit, Plaintiff filed an administrative claim with the Equal Employment Opportunity Commission ("EEOC") alleging Defendant's discrimination and subsequent retaliation. ECF No. 7-1. In its entirety, the complaint read:

> I was hired by Workforce Council (hereinafter "Respondent") on or about February 18, 2025. I have performed the duties of my position as Career Planner, Case Manager, and Counselor in a satisfactory manner.
>
> On or around April 2, 2025, I was falsely accused by a member of management of wearing a durag while at work. I subsequently submitted evidence refuting that allegation. I was also accused of wearing a baseball cap in violation of company policy. However, a white female employee was observed wearing a baseball cap, which is also against company policy. When I raised these issues with my supervisor, Star Mauhammad, she stated that she is primarily concerned with her "own people," suggesting a disparate enforcement of workplace rules. I have a disability of which the company is aware. On or around May 14, 2025, I requested reasonable accommodations from my manager, specifically asking not to drive long distances or for extended periods. However, this request was denied at the time. I was later asked to provide medical documentation, which I submitted on or around July 10, 2025. Additionally, on or around May 16, 2025, both my supervisor, Ms. Muhammad, and the Director, Michelle Olson, issued a disciplinary write-up against me, claiming insubordination for asking too many questions. It is important to note that all members of management, including my supervisor, are female. In addition, currently there's a Career Planner, Stephanie Wilson (Female) that works

> from home full time Monday thru Friday not due to a medical disability. I have a completed ADA form from my primary care provider for me to work from home as an accommodation, but I was denied by Holly Bryant and Amanda Slosson who stated that no one is working from home as a Career Planner which is a false statement that can be proven through witnesses and testimony.
>
> I believe that I have been denied reasonable accommodation, subject to different terms and conditions of employment, harassment, targeting due to my race (African American), sex (male), disability, and in retaliation for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.

*Id.*

On December 4, 2025, the EEOC informed Plaintiff that it would not proceed further with an investigation into the matter, and it issued a "right to sue" letter to Plaintiff. ECF No. 7-2. Accordingly, Plaintiff seeks damages for back pay, reinstatement or front pay, economic and non-economic damages, nominal damages, and fees. Am. Compl. ¶ 42. Specifically, Plaintiff asserts three Counts against Defendant:

Count I. Discrimination Based on Disability in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (*Id.* ¶¶ 26–31);

Count II. Retaliation in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (*Id.* ¶¶ 32–37);

Count III. Discrimination Based on Sex in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (*Id.* ¶¶ 38–42).

On April 29, Defendant filed Motion to Dismiss Count I in part, Count II in part, and Count III. Mot. Dismiss. On May 13, 2026, Plaintiff filed a Motion to Memorandum in Opposition to Defendant's Motion to Dismiss. Resp. Opp'n. On May 19, 2026, Defendant filed a Reply to Plaintiff's Memorandum in Opposition to its Motion to Dismiss. Def.'s Reply.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

## III. DISCUSSION

Under Rule 12(b)(6), Defendant moves to dismiss (1) Count I to the extent that it seeks failure to accommodate relief based on the alternative allegation that Defendant regarded Plaintiff as impaired; (2) Count II to the extent it asserts retaliation under Title VII; (3) and Count III. Mot. Dismiss. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Thus, the Court will determine whether Plaintiff has stated a claim for relief in Counts I, II, and III.

### A. Count I—Discrimination Based on Disability in violation of Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

Plaintiff's claim in Count I alleges discrimination based on disability. Am. Compl. ¶ 26. Specifically, Plaintiff asserts that Defendant discriminated against him in the terms and conditions of his employment and by terminating him because he suffered from a disability, or alternatively, that Defendant terminated Plaintiff on account of Plaintiff's *perceived* disability. *Id.* ¶ 27. Plaintiff alleges that Defendant discriminated against him by (1) refusing to grant Plaintiff larger-print documents; (2) refusing to allow him to work from home; and (3) terminating him. *Id.* ¶ 28-29. In its memorandum, Defendant argues that Count I should be narrowed because it attempts to plead in the alternative a theory that does not apply. Mem. Supp. at 6. It states that Plaintiff alleges that Defendant discriminated against him because he suffered from a disability, or alternatively, that Defendant regarded him as having an impairment. *Id.* Plaintiff responds that it does not make a failure to accommodate claim based upon a "regarded as" disability. Resp. Opp'n at 9-10.

Defendant states that Plaintiff fails to distinguish whether Defendant failed to provide accommodations on the basis of having a disability or being perceived as having one. Mem. Supp. at 6. Because the Americans with Disabilities Act ("ADA") does not require an employer to

provide reasonable accommodations for someone merely regarded as having a disability, Defendant argues that Count I should be dismissed in part. *Id.* at 6-7.

The ADA protects individuals with disabilities from discrimination in various critical areas, including employment. *See* 42 U.S.C. § 12101. ADA Section 12112 states that discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(5)(A).

Section 12102 states that the term "disability" encompasses "being regarded as having . . . an impairment." 42. U.S.C. § 12102(1)(c). However, the ADA clarifies that "[a] covered entity . . . need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in [section 12102(1)(c)]." 42 U.S.C. § 12201(h).

Therefore, Defendant need not provide reasonable accommodations for an individual who is regarded as having an impairment. The Code of Federal Regulations ("C.F.R.") states, "A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the 'actual disability' prong . . . or 'record of' prong . . . but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong." 29 C.F.R. § 1630.2(o)(4) (2025). Plainly stated, "there is no right to an accommodation where an individual is merely regarded as, but is not actually, disabled." *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 672 (E.D. Va. 2009).

However, the Amended Complaint does not allege that Defendant failed to accommodate based upon a "regarded as" disability. *See* Am. Compl. ¶ 27. Instead, it claims in the alternative

that Plaintiff was *terminated* on account of his perceived disability. *Id.* (stating, "Alternatively, Defendant regarded Plaintiff as having an impairment and terminated him on account of that perceived disability). Plaintiff does make a failure to accommodate claim, but the claim is not in connection with the "regarded as" prong of 42 U.S.C. § 12102(1)(C). *Id.* ¶ 29. Because Plaintiff makes no claim based upon failure to accommodate based specifically upon the "regarded as" prong, Defendant's Motion to Dismiss Count I is denied.

### B. Count II—Retaliation in Violation of Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Plaintiff's Count II alleges retaliation. Am. Compl. ¶ 32. Plaintiff asserts that Defendant retaliated against him when it terminated him for engaging in a protected activity, specifically, making requests for reasonable accommodation and making workplace discrimination and harassment complaints. *Id.* ¶¶ 33-34. However, Defendant argues that Plaintiff failed to state a retaliation claim under Title VII, and that Count II should be dismissed to that extent. Mem. Supp. at 8. Defendant contends that Plaintiff does not allege that he engaged in a protected activity under Title VII, or that an adverse action was taken as a result. *Id.*

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To bring a Title VII retaliation claim, Plaintiff must allege that: (1) he engaged in a protected activity, (2) the employer took an adverse action against him, and (3) there is a causal connection between the two events. *DeMasters v. Carilion Clinic*, 769 F. 3d 409, 416 (4th Cir. 2015) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)). Under Rule 12(b)(6), all allegations

made in the Complaint are assumed to be true and given a favorable construction. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556. (2007); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

**1. Protected Activity**

Defendant argues that Plaintiff has not committed any act that is protected under Title VII retaliation. Mem. Supp. at 8-9. Specifically, Defendant asserts that "[the Amended Complaint does not plausibly allege that Plaintiff engaged in protected activity under Title VII or that any adverse action was taken because of such activity." *Id.* The Amended Complaint states that the protected activity under Title VII includes "making . . . workplace complaints regarding discrimination and harassment against him." Am. Compl. ¶ 33. The complaint does not explain or describe the complaints any further. *Id.*

Disability status is not protected under Title VII, which protects "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Defendant argues Plaintiff's Title VII assertions are conclusory and scant, particularly compared to the ADA-related allegations. Mem. Supp. at 8-9. Plaintiff's reply fails to address the Title VII issue in totality, instead further supporting its claim for retaliation in violation of the ADA. Resp. Opp'n at 11-12 (describing only retaliation "stemming from his requests for reasonable accommodation.").

Protected activity under Title VII is "divided into two categories, opposition and participation." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 257 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3). Plaintiff claims he engaged in opposition activity. *See* Am. Compl. ¶ 33. The Supreme Court interprets "opposition" in this context to mean "to resist or

antagonize . . . ; to contend against; to confront; resist; withstand, . . . to be hostile or adverse to, as in opinion." *DeMasters*, 796 F.3d at 417 (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). Employees "engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543-44 (4th Cir.2003)).

Opposition activity can take the form of an internal complaint like Plaintiff's. *See DeMasters*, 796 F.3d at 417 (4th Cir. 2015) (noting that "utilizing informal grievance procedures" falls within the Court's "expansive view of what constitutes oppositional conduct" (citation omitted)). However, such a complaint constitutes protected activity *only* if it was directed at "an unlawful employment practice" under Title VII. § 2000e-3(a). *Id.*

An unlawful employment practice for retaliation claims is broadly construed; an employee is protected when he opposes "not only . . . employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406. (4th Cir. 2005). The alleged actions in this case are discriminatory treatment and harassment. Am. Compl. ¶ 33. However, Plaintiff's Amended Complaint fails to allege that he complained to his employer specifically of sex-based discrimination. Plaintiff did not file his EEOC complaint involving Title VII until after his termination. *See* ECF. No. 7-1. Because Plaintiff did not state that he complained of specifically of sex-based discrimination and harassment to Defendant, Plaintiff has not satisfied the first element of a retaliation claim.

**2. Adverse Action**

"An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). Here, both parties agree that Plaintiff was terminated, an action that explicitly constitutes an adverse employment action. *Id.*; Am. Compl. at 24, 33; Mem. Supp. at 8. Therefore, the Plaintiff's allegations satisfy the second element.

**3. Causal Connection**

Even if the Plaintiff satisfies the first two elements of a Title VII retaliation claim, which he does not, Defendant argues that Plaintiff does not establish a causal connection between his protected activity and termination. Mem. Supp. at 9. Defendant reasons that the Amended Complaint does not state that any of Defendant's decisionmakers knew of the protected activity and acted because of it. *Id.*

"[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer" and not merely a motivating factor. *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 362 (2013). However, "[a]t this stage in the litigation, establishing a causal relationship between the protected activity and the adverse action is not an 'onerous burden.'" *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 359 (E.D. Va. 2023) (citing *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335 (4th Cir. 2018)). At the pleading stage, the causal nexus between the protected activity and the adverse employment action must be shown through a "reasonable inference." *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543 (4th Cir. 2003).

Here, Plaintiff alleges[2] that (1) he "raised issues" regarding a citation for wearing a baseball cap to his supervisor, Am. Compl. at Exhibit 1; and that he (2) "made complaints to his managers and Human Resources regarding discriminatory treatment and/or harassment" throughout his employment with Defendant. *Id.* ¶ 16.

Neither statement alleges that Plaintiff complained of discriminatory treatment based on sex, or that the decisionmaker that terminated Defendant knew of a Title VII-related complaint at that time. "At minimum, for a causal connection to exist between a protected activity and an adverse employer action, the employer must know of the protected activity." *Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 150 (D. Md. 2019) (citing *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017)). Because Plaintiff did not state that he complained of sex or gender-related discrimination, he has not established a causal link between his complaint and the termination decision.

Stating that Plaintiff made "workplace complaints regarding discrimination and harassment," without more, does not demonstrate a Title VII protected activity. Because Plaintiff has not sufficiently alleged that he engaged in protected activity or that there is a causal link between the activity and his eventual termination, Plaintiff has failed to state a Title VII retaliation claim. Therefore, Defendant's Motion to Dismiss Count II for its Title VII claim is granted.

### C. Count III—Discrimination Based on Sex in Violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Plaintiff's claim in Count III alleges sex discrimination. Specifically, Plaintiff asserts that Defendant discriminated against him by refusing Plaintiff's work-from-home request, while a

[2] Plaintiff only alleges this in his EEOC complaint, not the Amended Complaint itself.

similarly situated female employee was allowed to work from home full time. Am. Compl. ¶ 40. In its reply, Defendant argues that Plaintiff fails to state a claim for Title VII discrimination. Mem. Supp. at 3. Defendant claims Plaintiff does not plausibly allege that Stephanie Wilson, Plaintiff's female counterpart, is similarly situated. *Id.* Additionally, Defendant argues that Plaintiff "does not plead facts that support a plausible inference of discriminatory motive." *Id.* at 4. Finally, Defendant claims that Plaintiff's complaint itself offers a facially neutral explanation for the challenged conduct, the creation of DOGE. *Id.* Plaintiff responds that he need not plead specific facts establishing a prima facie case of discrimination in his complaint. Resp. Opp'n at 3. Further, he states that "Plaintiff's allegations of disparate treatment between he and a female comparator more than satisfy his burden to allege a plausible cause of action under Title VII." *Id.* at 6.

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discriminate against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff need not plead facts that constitute a prima facie case to survive a motion to dismiss. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). At the pleading stage, a plaintiff need only plausibly allege facts sufficient to raise an inference of unlawful discrimination and satisfy the elements of the claim above the speculative level. *Swierkiewicz*, 534 U.S. at 510.

To establish a claim under Title VII, Plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012). The plaintiff must also plausibly allege that the motive to discriminate based

on sex was at least one of the employer's motives. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016); *Boney v. Trs. of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 764 (E.D.N.C. 2019).

Defendant argues that Count III does not plead facts that support a plausible inference of discriminatory motive. Mem. Supp. at 4; Def.'s Reply at 2-7. Specifically, it states, "[t]he Amended Complaint contains no allegation that any decisionmaker made a sex-based remark, expressed bias against men, applied a policy differently to men as a class, or otherwise connected the remote work decision to Plaintiff's sex." Mem. Supp. at 4.

The Court finds that Plaintiff has not demonstrated sex discrimination. Plaintiff's Amended Complaint is insufficient to support an inference of sex discrimination claim because Plaintiff has not pleaded facts that demonstrate different treatment from similarly situated employees outside of his protected class. "[E]mpty allegations of a causal connection between an employee's sex and the alleged discrimination are insufficient to state a plausible claim." *Boney v. Trs. of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 765 (E.D.N.C. 2019) (citing *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

Plaintiff's allegations are conclusory because there is no evidence that this female and non-disabled colleague was similarly situated to Plaintiff at the time his work-from-home request was denied. In evaluating Plaintiff's comparator-based argument, employees are similarly situated if they are similar in all relevant respects. *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). However, Defendant states that his remote work request was made in connection with his disability. Am. Compl. ¶ 21. He states that he and Ms. Wilson were "similarly situated in all material aspects aside from sex and disability status." *Id.* ¶ 40. The Court finds that Defendant's disability status makes him dissimilar to his comparator in a relevant aspect. *See Haywood v.*

*Locke*, 387 F. App'x at 359. Plaintiff admits that he and Ms. Wilson had different reasons for requesting remote work. *See* Am. Compl. ¶¶ 21, 23. Specifically, Ms. Wilson lived on the Eastern Shore, which is not a locality that Defendant services. *Id.* n.1. Accordingly, the Court finds that Plaintiff has not plausibly alleged that sex was the motivating factor in Defendant's decision, rather than disability status or location. The Court need not address the DOGE issue.

Plaintiff contends that instances of requiring him to work off-the-clock and citing him for a dress code violation "directly support the inference that Defendant has a sex-based bias against Plaintiff." Resp. Opp'n at 7. The Court first addresses the allegation that Defendant required Defendant to work overtime without pay, in contrast to his female counterparts. *See* Am. Compl. ¶ 16. In response, Defendant argues that this allegation lacks crucial details, such as dates, the supervisor involved, or what the "acknowledgements entailed. Def.'s Reply at 5. Blanket statements that Plaintiff was made to work "off the clock without pay" and "sign various acknowledgements and similar documents," without more, are not enough to support a reasonable inference that sex discrimination motivated those actions. *See McCleary-Evans*, 780 F.3d at 586. Because Plaintiff does not provide further information on the "off the clock" work, the Court cannot connect the allegation to a plausible case of sex discrimination.

The Court also finds that Plaintiff's dress-code violation does not raise an inference of sex discrimination. *See* Am. Compl. ¶ 17. Defendant argues that the dress code allegation depicts a "discrete workplace agreement, not something derived from discriminatory animus." Def.'s Reply at 5. First, this allegation does not specify whether Plaintiff wore a hat or a durag, or if he wore any head covering at all. Am. Compl. ¶ 17. If Plaintiff wore a durag, then according to his

statements of facts, he was not treated differently than his female coworkers, who wore *hats*.[3] *Id.* Therefore, a dress code citation would not be consistent with sex discrimination, because hats and durags are not the same. *Cf. Powells v. 1600 W. Loop S., LLC*, No. CV 23-3790, 2025 WL 306644, at *5 (S.D. Tex. Jan. 27, 2025), aff'd sub nom. *Powells v. 1600 W. Loop S., L.L.C.*, No. 25-20026, 2026 WL 207497 (5th Cir. Jan. 27, 2026) (explaining that cowboy hats and baseball caps were not comparable in a discrimination case). Plaintiff also does not state which supervisor issued the dress code citation, which could at least loosely link the incident to other allegations. Plaintiff's allegations relating to the dress code lack sufficient facts to support an inference of a discriminatory motive. The Court finds that Plaintiff has not carried his burden regarding his claim of sex discrimination in violation of Title VII and Count III must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED in PART and DENIED in PART**. ECF No. 8. The Motion to Dismiss Count II is **GRANTED** and the Motion to Dismiss Count III is **GRANTED**. *Id.* The Motion to Dismiss Count I is **DENIED**. *Id.* The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 13 , 2026

/s/
Raymond A. Jackson
United States District Judge

[3] Plaintiff's EEOC complaint states that he was *falsely accused* of wearing a hat *and* a durag on two different occasions, which conflicts with his Amended Complaint. ECF No. 7-1. Without details on the issue, the Court cannot conclude that the dress code incident supports an inference of discriminatory motive.